T.C. Summary Opinion 2008-13


UNITED STATES TAX COURT


BRIAN E. & MARCIE L. MALLIN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2370-06S.                Filed February 11, 2008.


Brian E. Mallin and Marcie L. Mallin, pro sese.

Tamara L. Kotzker, for respondent.


ARMEN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in petitioners' Federal income taxes as follows: $4,248.94 for 2001, $138.33 for 2002, and $174 for 2003. After concessions by both parties, the principal issues remaining for decision are: (1) Whether petitioners are entitled to deduct a loss in 2001 on the sale of their primary residence for the portion of that sale allocable to the workshop used in petitioners' business, and (2) whether petitioners are entitled to deductions in 2001, 2002, and 2003 for depreciation on a furnace and a garage workshop, both used in their business.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time the petition was filed, Brian E. Mallin and Marcie L. Mallin resided in Wyoming.

Petitioners purchased a residence in Sioux Falls, South Dakota (the South Dakota property), in 1995. Petitioners refinanced their house in 1998. As part of the refinancing process, the house was appraised at $199,000. During 1999 and 2000, petitioners built a 352-square-foot workshop on this property at a total cost of $16,179. The workshop was built as

an addition to the existing attached two-car garage. It had a wall separating it from the garage and its own overhead garage door.

In late 1999 or early 2000, petitioners began a woodworking business, making Adirondack chairs, tables, and ottomans. The garage workshop was used for this business. Petitioners claimed and were allowed $346 of depreciation for the workshop on their Schedule C, Profit or Loss From Business, attached to their 2000 Federal income tax return.

Petitioners sold the South Dakota property in February 2001 for $203,000. The house was purchased by a relocation company, which priced the house by averaging two appraisals: One for $200,000 and one for $206,000. Those appraisals valued the workshop as a third-car garage; one valued it at $3,000 and the other at $10,000.

Petitioners reported no gain on the sale of the South Dakota property because the amount realized was not taxable pursuant to section 121. See sec. 121(a) and (b)(2)(A). Petitioners reported a loss of $9,731 on the same sale, all of which was attributed to the sale of the workshop.

In 2000 petitioners moved to Cheyenne, Wyoming. They purchased a house there in 2001 (the Wyoming property). After purchasing the Wyoming property, petitioners converted the existing attached garage into a workshop; as part of the

conversion, they installed a furnace in the workshop. Petitioners then spent $18,123 building a new garage in which to house their vehicles.

Making and selling chairs did not go well in Wyoming, so petitioners tried their hands at wood signs and carved duck decoys. They also gave away beaded keychains as a promotional item for their woodworking business. Ultimately, petitioners terminated their woodworking business in 2003.

## Discussion

Although only two principal issues remain in the case, we discuss all of the adjustments made in the notice of deficiency for the sake of clarity.

### 1. Schedule C--2001

After discussion and elaboration at trial, it became clear that the bead and decoy expenses denied by respondent were incurred by petitioners as part of their woodworking business, and we find for petitioners on those items.

### 2. The Wyoming Workshop

Petitioners claimed deductions on their Federal income tax returns for the years 2001, 2002, and 2003 related to the furnace installation in, and business use of, the Wyoming workshop. Unfortunately for petitioners, any deductions related to the business use of the Wyoming workshop are limited by the provisions of section 280A(c)(5). See also Rule 142(a); INDOPCO,

Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Generally, section 280A(a) prohibits deductions allocable to the business use of a "dwelling unit" used by a taxpayer during the taxable year as a personal residence. However, if a portion of the dwelling unit is used as a taxpayer's principal place of business, deductions allocable to that use are permitted, though they are limited if the gross income from the business use is less than the total business expenses. Sec. 280A(c)(1), (5). Here, petitioners had insufficient gross income from their woodworking business in 2001, 2002, and 2003 to offset deductions for either the furnace or the workshop after the application of section 280A(c)(5).

Respondent does not dispute the Wyoming workshop was used as petitioners' principal place of business with respect to their woodworking business. The issue is simply whether the garage-turned-workshop should be considered part of the Wyoming residence and thus be subject to the home office limitations of section 280A.

Notably, the workshop was attached to the house, and petitioners used its entrance to gain access to the residence in the winter. Aside from common sense--an attached garage is considered part of one's home under normal circumstances--caselaw has held that even a detached office building located on the same

property as the taxpayer's residence 12 feet away was part of the taxpayer's "dwelling unit".  See Scott v. Commissioner, 84 T.C. 683 (1985).  Further, the term "dwelling unit" is defined as a house and all structures or other property appurtenant to the house.  Sec. 280A(f)(1).  An attached garage is clearly appurtenant to the house.

Petitioners argue that because they never used the workshop as a garage or as a personal space, the analysis should be different.  We disagree, and respondent's determination as to this issue is sustained.

3.  The South Dakota Workshop

Respondent initially denied a loss on the sale of the South Dakota workshop on the basis that it was part of the residence and thus the loss was personal in nature.  Generally, no deduction is allowed on a loss incurred by a taxpayer with respect to the sale of his principal residence.  See sec. 165(c); sec. 1.165-9(a), Income Tax Regs.  Respondent has since modified his position, and the parties now agree that the workshop was used for a business or income-producing purpose.  The crux of the remaining disagreement is how to calculate any gain or loss on the portion of the South Dakota property specifically attributable to the workshop.  See sec. 1.165-9(b), Income Tax Regs.  In particular, the parties disagree on how to apportion

the $203,000 sale price for the South Dakota property between the residence and the workshop.

Respondent urges us to apportion the sale proceeds of the South Dakota property by square footage; because the workshop was approximately 9 percent of the home's overall square footage, respondent suggests that we should allocate 9 percent of the home's sale price to the workshop. However, given that workshop space is not as valuable as living space in a home, we decline to use respondent's calculation method.

Petitioners, on the other hand, urge us to assign $4,000 of the sale price to the workshop. They arrive at this number by calculating the difference between the 1998 appraisal of $199,000 and the 2001 sale price of $203,000; in other words, petitioners attribute the entire increase in the home's value between 1998 and 2001 to the workshop. They contend that all of the increase must have been a result of the workshop as that was the only thing that changed in the period between appraisals. We disagree with petitioners' argument.

Rather than use either of the parties' methods to allocate the proceeds from the sale of the South Dakota property between the residence and the workshop, we shall use the only allocation approach supported by the record; i.e., taking the average of the appraisals of the workshop value used for the 2001 sale. This approach may be an imperfect solution given the fact that the

appraisals both value the space as a third-car garage, but, as respondent recognizes, this approach mirrors the valuation of the entire South Dakota property. And, as petitioners provided us with no evidence to support any other valuation, this is the best we can do on the record before us. See Rule 142(a); INDOPCO, Inc. v. Commissioner, supra; Welch v. Helvering, supra.

4. Recapture From the Sale of the South Dakota Property

For 2000, petitioners deducted $346 as a depreciation allowance on the South Dakota property's workshop pursuant to section 167. Respondent determined that the amount was subject to recapture. Because petitioners are entitled to some loss on the sale of the South Dakota workshop, there was no gain on its sale, and we need not reach a conclusion on this issue. See also sec. 1.1250-1(a)(5)(i), Income Tax Regs.; cf. secs. 121(d)(6), 1250(b)(3); sec. 1.121-1(e)(4), Example (5), Income Tax Regs. We therefore do not sustain respondent's determination regarding recapture.

5. Itemized Deductions-2001, 2002, 2003

To the extent respondent made adjustments to petitioners' itemized deductions because of changes determined in the notice of deficiency, those adjustments should be modified to reflect the other issues already conceded by the parties and those discussed herein.

## Conclusion

To reflect our disposition of the disputed issues, as well as the parties' concessions,

**Decision will be entered**

**under Rule 155**.